OPINION OF THE COURT
Ralph Diamond, J.
The court has before it a petition for a violation, of a support *892 order and a petition for a downward modification of a support order of this court.
The petitioner’s petition alleges a violation of a support order of this court, ordering the respondent to pay the sum of $25 per week, for the support of two children. The support order granted December 19, 1977, was based upon respondent’s unemployment insurance of $115 per week and his ability to earn money as a musician. The respondent admits that there were arrears outstanding at the time of the hearing.
The respondent-applicant has brought a petition to modify that support order by suspending support payments. He bases his petition on the fact that he is no longer receiving unemployment insurance checks.
AMENDMENT, SECTION 454, FAMILY COURT ACT
The Legislature amended section 454 (subd 1, par [a]) of the Family Court Act (L 1977, ch 516, § 18, eff July 1, 1977) by adding the following sentence: "For purposes of this subdivision, failure to pay support, as ordered, shall constitute prima facie evidence of a willful violation.”
This appears to be a case of first impression as to the effect of that amendment.
The issue before the court is the effect of the amendment and its impact upon recent willful finding decisions in Matter of Rockland County Dept, of Social Servs. v Palatnik (59 AD2d 558), Matter of Blanchard v Blanchard (54 AD2d 697), Matter of Lieherman v Lieberman (51 AD2d 745), Matter of Halleck v Hayden (47 AD2d 855), Matter of Burchett v Burchett (43 AD2d 970), Matter of Abbondola v Abbondola (40 AD2d 976).
Prima facie evidence is described in Black’s Law Dictionary (Rev 4th ed, p 1353) as follows: "Evidence good and sufficient on its face; such evidence as, in the judgment of the law, is sufficient to establish a given fact, or the group or chain of facts constituting the party’s claim or defense, and which if not rebutted or contradicted, will remain sufficient.”
LAW AND BURDEN OF PROOF NOT AFFECTED
In reviewing the effect of the prima facie amendment, the court first wishes to emphasize that the amendment does not alter the following:
*893 a) The burden of proof is still upon the petitioner and remains upon the petitioner, throughout the hearing. (See Richardson, Evidence [10th ed], p 71.)
b) The court must continue to explore in depth the respondent’s ability to pay and whether he has made diligent efforts to seek employment which would enable him to pay the support order. Unless the court is satisfied by competent proof, that the respondent’s failure to pay support was willful, it may not find him in violation or sentence him to jail. (Matter of Halleck v Hayden, supra; Matter of Abbondola v Abbondola, supra.)
EFFECT OF AMENDMENT
What then is the effect of the amendment?
The petitioner’s burden of initially going forward is now limited to proving that the respondent has not paid support pursuant to the order of the court. By making the respondent’s failure to pay support as ordered, prima facie evidence of a willful violation, the Legislature has shifted the burden of then going forward to the respondent. The respondent now must present evidence sufficient to rebut or contradict the prima facie evidence of a willful violation. The ultimate burden of proof of respondent’s willful default, remains with the petitioner throughout the hearing.
In the event the court determines that the respondent has not by competent proof contradicted or rebutted the statutory prima facie evidence, it will find in favor of the petitioner.
If the court by competent proof by the respondent, is satisfied that his failure to pay support, was not willful, but due to his inability to pay and that he has made diligent efforts to find employment, the burden of going forward with the evidence shifts back to the petitioner.
Should the court find that the petitioner has met her burden of proof, by a preponderance of the credible evidence that the respondent’s failure to pay support, was willful, then the court will grant the petitioner’s violation petition and may sentence the respondent to jail.
However, if the court finds that the petitioner has not met her burden of proof of respondent’s willful violation by a preponderance of the credible evidence or if the evidence is equally balanced, the violation petition must be dismissed.
*894 FACTS
The respondent admits that he is in default; however, he denies that it is willful. He claims that despite his efforts, he has been unable to get employment. He further contends that he has no assets or means of obtaining funds and that his unemployment insurance checks have run out.
The only evidence the respondent offers to support his contention that he is sincerely trying to gain employment, are 11 letters of rejection from potential employers. He submits one letter granting him an interview. He testified that he already had 20 interviews but no one hired him. No proof is offered in the form of witnesses, correspondence, etc. He claims that he still has five interviews for employment in the pharmaceutical or allied field; however, nothing is offered to corroborate his testimony. He claims he makes out-of-State calls for jobs, but is unable to match his phone calls with any correspondence or other corroboration. He claims he is listed with various employment agencies, but again offers no proof of what type of employment he is seeking or what salary range he is willing to accept.
The respondent testified that he was looking for any employment, even if it would pay $5,000 a year. Yet a review of his other testimony and the evidence offered and accepted in evidence indicates the opposite to be true. He admits that a trained salesman could sell anything; nevertheless, he testified that, "I’ve been looking all along at anything that requires a professional salesman which will accept my background.”
In explaining the cost of "school tuition” he testified that he recently paid in advance for a biochemistry course because, "it was in my field, to help me in my field.”
It is further interesting to note that of the 12 employer letters he offered in evidence, all were in the pharmaceutical or allied field. Furthermore, he admits that the unemployment insurance personnel did not send him out once for a job, because they had nothing in his field. He offers no proof that he has ever applied for a salesman job with any department store or other employer outside of his field.
In addition to his salesman experiencé, the respondent is a professional musician. Judge Loewy of this court, after a hearing, based his support order on the respondent’s ability to earn money as a musician. According to the respondent’s testimony, he has had only two musician jobs during the past *895 four months. Other than citing a list of potential bands that might retain him, he offers no witnesses or other type of proof to corroborate his efforts to obtain employment as a musician. He does indicate that he has some musician jobs coming up for which he will receive about $60 per day.
court’s findings as to employment
The court has carefully reviewed the respondent’s alleged efforts to find employment as a salesman or a musician and finds it incredulous that the respondent did, in fact, exert such efforts and it produced absolutely no results. He has offered no corroboration of anything. Mere assertions on his part are not tantamount to proof that he has made diligent effort to obtain employment. The court further finds that the respondent has limited his efforts to becoming a salesman in the pharmaceutical or allied field only. He testified that he is turned down in other salesman jobs because he is "over qualified”. He admits that he is mentally and physically capable of working. He has a good educational background. The court observed him during the trial to be poised, suave, cultured, self-assured and fully capable of taking good care of himself. Certainly a person having such potential could have found employment to enable him to pay the modest sum of $25 per week for the support of his two children.
The respondent has the burden of going forward with evidence that his default was not willful but resulted from his inability to pay support despite his diligent efforts to find employment. The court concludes that he has failed to present evidence sufficient to rebut or contradict the prima facie evidence of a willful violation.
LAW,
The law is well settled that the respondent’s present economic condition is not the measure of the proper amount of support for the petitioner and his dependent children, but rather it is his ability to provide — his potential earning power which must be considered. The fact that he does not work, does not, in and of itself, preclude his capacity to work, nor preclude a finding that he has means wherewith to discharge an order for support (De La Ferriere v De La Ferriere, 94 NYS2d 147). The court is under an affirmative duty to fix an order measured by respondent’s ability to earn a living (De *896 Brauwere v De Brauwere, 203 NY 460). The measure of ability to support is not based upon what an irresponsible husband designs to earn, but what he is potentially able to earn in light of his established capabilities. (Brandt v Brandt, 36 Misc 2d 901; Diana L. v State of New York, 70 Misc 2d 660.)
ABILITY TO PAY
The court has further reviewed his claim that he did not have the availability of means to pay the court support order. The respondent, during the trial, explained how he managed his financial affairs without any income from earnings and with no money in the bank.
The respondent, in a self-assured manner, testified that he has credit cards from every gas company except Getty. He also has Bank Americard, Master Charge and Visa. In addition, he has a "privileged checking account” with Chemical Bank which he established over 10 years ago. This "privileged checking account” permits him to write checks which will be honored by the bank despite the fact that he has no money in his checking or any other account with Chemical Bank. He has a right to overdrafts up to $5,000. The respondent admits that for the last year or longer he had a negative balance. He further testified that since the support order of the court on December 19, 1977 he has gone further into debt on this account by about $1,000 and as of this date he has a balance or credit remaining of $632.22.
The respondent has managed to survive by obtaining merchandise or services by using his credit cards. When he is pressured, he issues a check for the minimum payment required. Despite the fact that he has no money in the bank, his checks are honored and the amounts of the checks are automatically added to his loan account. Every now and then he has to pay something towards the loan account. He then borrows money from his sick elderly parents, pays the bank a token amount and now he is in a position to issue more checks which will be honored by his bank, although he has no money to cover the checks.
The respondent testified that he owns and drives a 1972 Cadillac and lives alone in a Great Neck apartment with a rental of $265 per month. The rent for the past four months has been paid by his parents in order to avoid his being dispossessed by the landlord. He does concede that, "It’s not easy living this way”. In addition, his elderly sick father pays *897 for and goes food shopping with this healthy 37-year-old respondent in order to make certain he has food in his apartment.
FINDING AS TO ABILITY TO PAY
The court finds that at the time of the trial, the respondent had the ability to pay the entire arrears of $250 outstanding at the time of trial, by simply writing a check on his "privileged checking account”. Having a balance of $632.22 left in his credit, the bank would have honored his check. Furthermore, the respondent had available to him, $1,000 from December, 1977 to the present from that same bank account, plus $2,000 to $2,500 which he borrowed from his parents. He chose to pay gas, telephone, etc., creditors, instead of paying support for his children, pursuant to an order of this court. The court, therefore, concludes that he had the ability to pay and his failure to pay was willful.
SUMMARY AND DECISION
In summary, the court finds that the respondent has not, by competent proof, contradicted or rebutted the statutory prima facie evidence of a willful violation. Instead, the court finds that the respondent had the ability to pay and he had not made diligent efforts to seek and obtain employment. The petitioner’s petition for a violation of a support order of this court is granted, and the respondent’s petition for a modification downward is dismissed.
ORDERS
It is, therefore, the order of the court that the current support order of the court is continued and the arrears established at $325, and it is further, ordered, that the respondent is sentenced to 30 days in the Nassau County Correction Center.
Execution of sentence is hereby suspended on the condition that he pay towards the arrears, the sum of $125 by June 12, 1978, 4:00 p.m., and the balance of the arrears of $200 by July 3, 1978, 4:00 p.m. Payments are to be made to the Support Collection Unit of the Nassau County Family Court. Commitment to issue upon default of the payments herein set forth.