OPINION OF THE COURT
Joseph Jaspan, J.
The plaintiff wife moves for an order enforcing the alimony and child support provisions incorporated in a decree of divorce and in aid thereof moves, pursuant to the provisions of section 49-b of the Personal Property Law, to reach sums due the defendant from the United States Civil Service Commission, Bureau of Retirement, Insurance and Occupational Health.
The defendant cross-moves for an order reducing the amount of alimony and child support and for an order directing the plaintiff to refrain from interfering with his visitation rights.
The parties entered into a separation agreement on June 16, 1976 which provided, inter alia, for the payment of $600 per month in alimony and $200 per month for each of the two younger children of the marriage, William, then aged 14, and Thomas, then aged 13. The wife was given custody subject to liberal visitation rights to be agreed upon but not less than alternate weekends.
It provided that the agreement would survive any decree of divorce and "shall be incorporated by reference or in substance in any court decree”. It further provided that the agreement and performance thereunder and all suits and special proceedings thereunder be construed in accordance with the laws of the State of New York.
The marriage was thereafter dissolved by a decree of divorce issued on July 16, 1976 in the Dominican Republic which provided that the afore-mentioned separation agreement "shall survive and shall not be merged in the Judgment of Divorce” and further provided "that the parties are hereby ordered and directed to comply with each and every provision of the said agreement”.
*777 The defendant has failed to make any payments since June, 1978 except for the sum of $400 in August, 1978. The parties have stipulated that the arrears as of the date of the hearing (Feb. 1, 1979) were $7,575, 60% attributable to the wife and 40% to the children.
JURISDICTION
The defendant acknowledges that section 466 (subd [c], par [i]) of the Family Court Act authorizes this court to enforce the provisions of a Santo Domingo decree (Matter of Seitz v Drogheo, 21 NY2d 181; Lombardo v Lombardo, 37 AD2d 993) and that this court also has the power to modify the alimony and support provisions (Buchman v Buchman, 61 AD2d 973).
He claims, however, that these rights are limited to cases where the foreign judgment has entered an order or decree granting alimony and support and that the mere incorporation of the separation agreement by reference does not accomplish that purpose.
This court disagrees upon the authority of Gardner v Gardner (40 AD2d 153, affd 33 NY2d 899).
Matter of Silver v Silver (36 NY2d 324) and Wertheimer v Wertheimer (50 AD2d 879) do not hold to the contrary. They limit the authority to enforce or amend to cases where there is a currently effective support or alimony provison.
FACTS
At the time of the execution of the separation agreement the husband was receiving a disability pension of $12,000 (now approximately $12,750) per year by reason of injuries sustained while an agent of the FBI. In addition, he was then earning $16,000 per year as an undercover investigator for the Nassau County District Attorney. In August, 1978 he was forced to resign that position because he had published a book about his FBI activities which contained admissions that he had engaged in illegal searches and illegal wiretapping and because the jacket featured his picture therby destroying his usefulness as an undercover agent.
In February, 1977 he was remarried to a fellow Nassau County employee then earning $15,000 per year who was later obliged in September, 1978 to take leave of her position to give birth to their child. She is not presently employed.
The net effect of these events was to reduce his earnings to *778 the disability income at a time when he was also obliged to support his new family.
While the defendant claims that his former wife has an income derived from a "responsible position with Suffolk County”, no evidence was presented by either to otherwise define that job or the salary it commands. The plaintiff’s affidavit of August 25, 1978 states her salary to be $7,200 per year. Her other income, consisting of dividends is computed by her at $800 per annum.
The husband’s affidavit of September 14, 1978 indicated ownership of a home valued at $55,000 free of liens, two automobiles worth $10,000 subject to liens of $3,500 now reduced to $1,350, $500 in cash and $500 in stocks and bonds and two boats worth $4,000. On the stand the defendant also acknowledged prior receipt of $25,000 for rights to his book, which he claims has been disbursed for living expenses.
Testimony at the hearing before this court established that the defendant bought a boat in July or August of 1978 at a time when he was no longer making support or alimony payments; that he declined a job as head of security for Lee Myles and also declined a job as chief of security at the Waldorf Astoria, both at a proposed salary of $25,000 per year.
Some question arose as to the ability of the defendant to work, but that evidence establishes that his disability would not have impaired his ability to take on the security positions which were offered to him. Incidentally, an article which appeared in the magazine "People” in January of 1979 portrays the defendant as a virile, healthy man and shows a picture of him purporting to chop wood.
Significantly, during the period of his default and the pendency of these proceedings, the defendant transferred stock without consideration to his current wife and also conveyed title to his home valued at $55,000, free of lien, to his present wife and to his brother, also without consideration, in transactions which could trigger remedies under section 270 et seq. of the Debtor and Creditor Law.
defendant’s request for a modification
Alimony provisions can only be modified upon the moving party’s showing of a substantial change of circumstances that have not resulted from the actions or inactions of that party (Hickland v Hickland, 39 NY2d 1, reh 56 AD2d 978; *779 Canfield v Canfield, 55 AD2d 694; Tagarelli v Tagarelli, 50 ÁD2d 917).
Moreover, a husband may not avoid his obligation to support his former wife by an act of voluntary retirement (Matter of Grant v Grant, 61 Misc 2d 968) or by giving up his profession to pursue a career in some unrelated field (Matter of Sullivan v Sullivan, 55 Misc 2d 691, affd no opn 29 AD2d 739).
In Sullivan (supra), a reduction in child support payments was refused where the father deliberately left his job to pursue graduate studies.
It is also well settled that current economic condition is not the rod by which the proper amount of support is measured— the rod is the "ability to provide” and requires that potential earning power be considered. (Kay v Kay, 37 NY2d 632; Matter of Porcelain v Porcelain, 94 Misc 2d 891.) As stated in Porcelain (supra, p 895): "The fact that he does not work, does not, in and of itself, preclude his capacity to work, nor preclude a finding that he has means wherewith to discharge an order for support * * * Thé measure of ability to support is not based upon what an irresponsible husband designs to earn, but what he is potentially able to earn in light of his established capabilities. ” (Emphasis supplied.)
Thus, the defendant’s current loss of income must be examined in light of his own testimony that he thereafter refused opportunities for significant gainful employment. The positions available paid substantially more than he had been earning with the Nassau District Attorney and provides substantial evidence that there has been no diminution in the defendant’s potential earning power.
Another consideration is the defendant’s remarriage. While remarriage with its concomitant support obligations may be viewed as a changed circumstance when there is also diminished income (Hickland v Hickland, supra; Matter of Windwer v Windwer, 39 AD2d 927, affd 33 NY2d 599), such remarriage should be considered in determining the amount of a modification only after the court has found that a modification is warranted. (Matter of Lawrence R. v Muriel R., 89 Misc 2d 666; cf. Swartz v Swartz, 43 AD2d 1012.) Here, there is no such finding.
Defendant’s contention that his former wife is currently receiving income from her job has some bearing on the matter before the court, its effect limited by the separation agreement *780 provision that "[t]he wife’s income shall not be a basis for application by the husband for a reduction of alimony.” (See Null v Null, 68 AD2d 883.) For the reasons set forth, I hold that the defendant’s application for modification should not be granted.
An additional reason exists for denying relief to the defendant.
This court now sits as a court of equity and one may be denied relief upon his failure to come before it with "clean hands’ (Christian v Christian, 42 NY2d 63; Henderson v Henderson, 63 AD2d 853; Gevis v Gevis, 141 NYS2d 121).
Here, the defendant, by his own admission, transferred a residence and stocks without consideration during the pendency of these proceedings. The acknowledgment by defendant that he made the transfer after being threatened with the loss of his home in an enforcement proceeding spells out the intent required by section 276 of the Debtor and Creditor Law.
While this court is without power to declare the conveyances null and void as against grantees who are not parties to these proceedings, it can, and does for these limited purposes, find them to be a "sham” and an attempt to perpetrate a fraud upon his former wife and his children. Since this defendant has come to this court with unclean hands, this court can and does refuse to grant any of the equitable relief which the defendant now seeks. (See Soldano v Soldano, 66 AD2d 839.)
plaintiff’s request for enforcement
As indicated above the defendant has failed to make the payments provided by the separation agreement.
The plaintiff seeks enforcement remedies which would effect collection of the sums due, stipulated to be $7,575 as of February 1, 1979, and to ensure payment in the future.
The defendant challenges the right of this court to reach his pension payments under section 49-b of the Personal Property Law and further claims that the plaintiff forfeited her right to her alimony (as distinguished from support payments for the children) by wrongfully interfering with his visitation rights (Domestic Relations Law, § 241).
This latter section provides, in effect, that where a custodial parent wrongfully interferes with or withholds court-ordered visitation rights, "the court in its discretion, may suspend alimony payment or cancel any arrears that may have ac *781 crued during the time that visitation rights have been or are being interfered with or withheld” (see Farhi v Farhi, 64 AD2d 840).
However, the facts before this court lead to a conclusion that there was no wrongful interference by the plaintiff. William Villano, now aged 17, called as an unsworn witness testified that while his mother discouraged visits by him and his 16-year-old brother because of the stopped payments and even talked of suicide, she did not prohibit visits. He added that it was his own decision not to socialize with his father on a regular basis because of the latter’s indifference to his financial obligations to his mother. If anything, the refusal of the children to visit the father and the attitude of the mother were the direct results of defendant’s decision to withhold the alimony and support payments.
I conclude that defendant is not entitled to any discharge of accrued alimony payments and that he is liable for the full amount of support and alimony as set forth in the provisions of the separation agreement.
I therefore find that the plaintiff is entitled to enter a judgment for arrearages in alimony and support in the amount of $7,575 due as of February 1, 1979 plus such sums as may have accrued thereafter and remain unpaid at the time of the entry of judgment and to use such remedies of enforcement as may thereafter be available.
The plaintiff has by this motion sought a wage deduction order against the defendant’s Federal disability pension under the provisions of section 49-b of the Personal Property Law. That section provides, in part, as follows: "When a person is ordered by a court of record to pay for the support of his children under the age of twenty-one * * * and/or former spouse, the court, at the time an order of support is made or any time thereafter, upon a showing of good cause, shall order his employer * * * or the United States to deduct from all monies due or payable to such person, the entitlement to which is based upon renumeration for employment, past or present, such amounts as the court may find to be necessary to comply with its order * * * In determining good cause, the court may take into consideration evidence of the degree of the respondent’s past financial responsibility, credit references, credit history, and any other matter the court considers relevant in determining the likelihood of payment in accordance with the support order.” (Emphasis supplied.)
*782 A wage deduction order is a remedy granted at the court’s discretion and may be imposed as to arrears or as to future payments (Ehrenzweig v Ehrenzweig, 86 Misc 2d 656, reh 89 Misc 2d 211, affd 61 AD2d 1003). Furthermore, upon good cause shown, this order may be granted at any time after the entry of an order of support.
The Santo Domingo decree which incorporated the separation agreement by reference did contain such an order in paragraph second thereof: "That the agreement entered into between the parties, dated the 18th day of June-of 1976, a copy of which is on file with this Court, shall survive and shall not be merged in this judgment of divorce and that the parties are hereby ordered and directed to comply with each and every provision of the said agreement.”
This order is the legal predicate for the action sought. This court would, in any event, have ordered and does order compliance with the support provisions of the agreement and sees no purpose in relegating the plaintiff to another proceeding to obtain an effective enforcement remedy under this section.
The remedy provided by section 49-b of the Personal Property Law may be sought at any time after decree and is thus distinguished from an application to punish for contempt (Domestic Relations Law, § 245) which requires presumptive evidence that other remedies including one of section 49-b of the Personal Property Law are not available. It is also distinguished from the section authorizing sequestration (Domestic Relations Law, § 243) which is interpreted by Lombardo v Lombardo (37 AD2d 993, 994, supra), may only be invoked: "after a judgment for arrears and future support is rendered and the defendant has failed to obey it (Domestic Relations Law, § 243) or has failed to obey an order of support and leaves or threatens to leave the State (Family Ct. Act, § 457).”
The plaintiff need not exhaust any other remedy to invoke section 49-b of the Personal Property Law provided that the evidence presented at a hearing meets the standards set forth therein as quoted, supra, thus constituting "good cause shown”.
Pension funds administered by private and/or public employers, such as the Federal Government are subject to a 49-b wage deduction order. (See Cogollos v Cogollos, 93 Misc 2d 406; Matter of M. H. v J. H., 93 Misc 2d 1016; see, also, *783 National Bank of North Amer. v International Brotherhood of Elec. Workers, 93 Misc 2d 590.)
As stated in Cogollos (supra, p 408): "The court does not believe Congress intended to create a privileged sanctuary, behind which a delinquent husband or father can thumb his nose at concededly valid and outstanding support orders. It is inconceivable that Congress meant to authorize use of a pension fund as a barrier behind which a husband could shed all his assets and income, live on the pension arrangements, and leave his wife — or, in other cases, infant children — to go begging for welfare.”
While section 49-b of the Personal Property Law contains no limitation upon the extent to which the target funds can be reached, a different rule prevails when the source comes within the jurisdiction of the Federal Government.
The applicable United States statute is section 1673 (subd [b], par [2]) of title 15 of the United States Code which provides as follows:
"The maximum part of the aggregate disposable earnings of an individual for any workweek which is subject to garnishment to enforce any order for the support of any person shall not exceed—
"(A) where such individual is supporting his spouse or dependent child (other than a spouse or child with respect to whose support such order is used), 50 per centum of such individual’s disposable earnings for that week”.
Plaintiff argues that this section is inapplicable since a Federal pension does not come within the definition of "earnings of an individual for any workweek”. Plaintiff, however, cites no authority for this proposition.
To the contrary, the term "earnings” as used in this statute "includes periodic payments pursuant to a pension or retirement program” (US Code, tit 15, § 1672). As such, Federal pension payments are subject to the provisions of section 1673 of title 15 of the United States Code (Samples v Samples, 414 F Supp 773).
Accordingly, the power to reach the disability pension payable to the defendant is limited to 50% of the aggregate amount received.
The application of the plaintiff to enforce collection of the sums which may become due to her for alimony and support by an order in accordance with section 49-b of the Personal *784 Property Law is granted to the extent of one half of each such payment as and when due and payable after service of an appropriate order upon the disbursing agent and the defendant. Since the funds so available to plaintiff would be approximately $532 .per month, the defendant is required and directed to supplement same by payment on the first day of each month to the extent necessary to meet this obligation as fixed by the separation agreement.
With respect to the arrears, plaintiff is relegated to such other enforcement remedies as may be available to her by separation application and/or if she be so advised, by plenary suit to set aside the afore-mentioned conveyances.