OPINION OF THE COURT
Shirley W. Kram, J.
On September 29,1980, this court was confronted with a unique situation. The respondent herein appeared pursuant to a Uniform Support of Dependents Law petition (Domestic Relations Law, art 3-A) for support of his five-year-old daughter of a previous marriage. The child lives with her mother in Puerto Rico.
The respondent’s position is that he cannot support this child “A” as he is now a “house husband” and has no income of his own. He is remarried and has a young child of the second marriage. His position, stated for the record in the courtroom, is that he does not work and does not plan to work for the next two years. Further, that he and his present wife have agreed that she will continue at her job and support the family, while the respondent remains at home to look after the household and the child. The parties do not want a babysitter caring for their child. It is the argument of respondent’s counsel to this court, that if respondent were a woman, he would not be expected to *218 leave a young child of a second marriage, to secure work and support a child of an earlier marriage.
It is conceded that respondent made payments of child support in 1977 and that there is a Puerto Rican divorce decree which provides for child support of $25 weekly. Petitioner mother is employed, but receives public assistance for the child.
This case presents interesting issues necessitating an examination of the evolution and interpretation of .the support obligation of parents and the impact the new equitable distribution statutes will have on these obliga-1 tians.
When the Family Court Act was enacted in, 1962, the father was primarily liable for the support of his children and the mother only secondarily liable, when death or disability of the father occurred (Family Ct Act, § 413). It was well established that support for children (and wives) was measured by the earning capacity of the father and not by his actual earnings (Hickland v Hickland, 39 NY2d 1). Thus, the courts have held that fathers/husbands were not permitted to relinquish gainful employment to become a student and start another career (Matter of Sullivan v Sullivan, 55 Misc 2d 691; Villano v Villano, 98 Misc 2d 774) or simply retire (Matter of Grant v Grant, 61 Misc 2d 968). The measure of support has been repeatedly held to be based on the father’s ability to earn (De Brauwere v De Brauwere, 203 NY 460; Kay v Kay, 37 NY2d 632; Matter of Porcelain v Porcelain, 94 Misc 2d 891; Brandt v Brandt, 36 Misc 2d 901).
In Matter of Windwer v Windwer (39 AD2d 927, affd 33 NY2d 599), the Court of Appeals held that a man’s first family has first claim on his income as opposed to his second family. Matter of Carter v Carter (58 AD2d 438) marked a turning point in the theory that the father is primarily responsible for the support of his children by imposing equal responsibility on the mother. The Appellate Division, First Department, agreed with Carter in Tessler v Siegel (59 AD2d 846), stating that equal protection demands that there be mutual parental responsibility for child support.
*219 Subsequently, the Supreme Court in Orr v Orr (440 US 268) struck down the Alabama statutory scheme providing that husbands but not wives may be required to pay alimony, as being violative of equal protection. In so doing, the Orr court (pp 279-280) quoted from Stanton v Stanton (421 US 7, 10), “ ‘the old notions’ that ‘generally it is the man’s primary responsibility to provide a home and its essentials,’ can no longer [be justification for] a statute that discriminates on the basis of gender. ‘No longer is the female destined solely for the home and the rearing of the family, and only the male for the marketplace and the world of ideas,’ id., at 14-15.” As a result of Orr, the whole of New York support and matrimonial statutes were amended to be gender neutral (see L 1980, ch 281). New York has gone even further by revising the divorce laws to provide for equitable distribution of marital property. The theory behind the new equitable distribution law is that marriage is an economic partnership. Therefore, all property and money accumulated during the marriage belong to both jointly. Further, since the marriage relationship is an economic partnership, property accumulated should be distributed in a manner which reflects the needs and circumstances of the parties regardless of the name in which property is held. (See Governor’s Memorandum filed with his approval of ch 281, McKinney’s Session Laws of NY, 1980, p 1863.)
The fundamental characteristic of equitable distribution is its inherent flexibility. It is an attempt at enabling economic justice to become a reality. Rather than provide narrow rules, equitable distribution establishes broad guidelines, thus granting Judges wide discretion in making decisions, yet requiring the court to set forth specific factors deemed critical to their decision. Flexibility was wisely built into the statute due to the many varied fact patterns to which it must be applied. (See Foster, Equitable Distribution: An Explanation of New York’s New Statute, NYLJ, July 24, 1980, p 1, col 2.)
In view of the foregoing and based upon the current law of New York, this court finds that the earnings of respondent’s present wife ($10,300 yearly) are the property of the marriage in accordance with the principles of equitable *220 distribution of marital property. Since the respondent contributes to the marriage by being a “house husband”, and caring for the child of the marriage, he is entitled to utilize the marriage property for the payment of his legitimate obligations. (See Broder, Trial Tactics, Techniques: New Bill of Divorcement, NYLJ, Sept. 12, 1980, p 1, col 1, for methods of evaluation of housekeeping services.)
Accordingly, the respondent herein is ordered to pay pursuant to a temporary order, the nominal sum of $5 weekly child support until such time as a further hearing can be had to establish obligations and expenses of respondent’s present family. Such hearing is to be held on January 5, 1981.