ROBBINS, APPELLEE, *v.* ROBBINS, APPELLEE; TIMKEN COMPANY, APPELLANT.

(No. 88AP-196—Decided August 30, 1988.)

*Lane, Alton & Horst* and *Philip B. Kaufman,* for appellee Richard C. Robbins.

*Gary W. Deeds,* for appellee Janet L. Robbins.

*Day, Ketterer, Raley, Wright & Rybolt, John H. Brannen, Sare E. Lioi* and *Larry R. Brown,* for appellant.

McCORMAC, J. Defendant-appellant, the Timken Company ("Timken"), appeals the order of the Franklin County Court of Common Pleas, Division of Domestic Relations, finding it in contempt of court for failing to deduct child support payments from supplemental unemployment benefits ("SUB") which Timken paid to plaintiff-appellee, Richard C. Robbins.

Appellant appeals the decision and asserts two assignments of error:

"I. The trial court erred, as a matter of law, in holding Defendant-Appellant, the Timken Company, in contempt for failure to comply with the trial court's order dated January 23, 1986, based upon that court's determination that the phrase 'personal earnings' in Ohio Revised Code Section 3113.21(D)(1) as used in the withholding order served on Defendant-Appellant, includes supplemental unemployment benefits (SUB) paid to Plaintiff-Appellee, Richard C. Robbins.

"II. The trial court erred, as a matter of law, in ordering Defendant-Appellant, the Timken Company, to pay the attorney fees of Defendant-Appellee, Janet L. Robbins."

The trial court granted defendant-appellee, Janet L. Robbins, a divorce and granted her custody of the couple's only child. Richard Robbins was ordered to pay Janet Robbins $40 per week in child support, plus two percent poundage. The money was to be paid through payroll deductions sent through the Bureau of Child Support in Columbus, Ohio, to the couple's child.

On January 23, 1986, the trial court ordered Richard Robbins' employer, Timken, to withhold $40 per week from plaintiff's personal earnings and to forward it to the Bureau of Child Support.

The court further ordered Timken to notify the court in writing within ten days after plaintiff was terminated, laid off, took a leave of absence without pay, or any other situation in which Timken ceased to pay personal earnings to plaintiff in an amount sufficient to cover the withholding order. Timken was also to identify in its notification any types of benefits other than personal earnings that plaintiff was receiving or was eligible to receive as a benefit of employment.

The trial court also ordered the plaintiff to immediately notify the court in writing of any change in his employment.

Timken's exhibit A is a letter dated

November 21, 1986, notifying the trial court that plaintiff was placed on layoff status on October 18, 1986, and that Timken was no longer paying him personal earnings. Moreover, Timken further stated that plaintiff may be eligible for supplemental unemployment benefits from Timken and unemployment benefits from the state of Ohio. No deductions were made after October 18, 1986, nor was a modified order issued to Timken.

The trial court sustained the ex-wife's motion requiring Timken to show cause why it should not be found in contempt for failing to comply with the trial court's previous order that Timken deduct $40 per week from plaintiff's personal earnings and send it to the Bureau of Child Support. The trial court found that the supplemental unemployment benefits paid to plaintiff by Timken as a result of a collective bargaining agreement were included under "personal earnings" in the court's January 23, 1986 order based on three factors: (1) policy considerations concerning the legislative interest in promoting payment of child support through withholding earnings; (2) Massachusetts case law; and (3) a definition of "earnings."

Thus, since Timken had not withheld $40 a week from supplemental unemployment benefits, the trial court found it in contempt of court.

The trial court ordered Timken to purge itself of contempt by paying $1,960, plus two percent poundage, to the child support agency which was the amount that Timken had not withheld from plaintiff's supplemental unemployment benefits. The court also fined Timken $200, to be suspended if Timken paid the $1,960 within ten days, and awarded Janet Robbins $432 in attorney fees receivable from Timken.

In its first assignment of error, Timken argues that the trial court erred, as a matter of law, in holding it in contempt for failure to comply with the court order dated January 23, 1986, based upon the court's determination that the phrase "personal earnings" as used in the withholding order includes supplemental unemployment benefits paid to plaintiff.

R.C. 3113.21(D)(1) provides that the court shall issue an order requiring the obligor's employer to withhold from the obligor's *personal earnings* a certain amount per week for support. R.C. 3113.21(D)(1)(a) states that the employer must notify the Bureau of Child Support in writing within ten days after terminating the obligor's employment. R.C. 3113.21(D)(1)(b) requires the employer to identify in its notification any types of *benefits other than personal earnings* that the obligor is receiving or is eligible to receive as a benefit of an employment, or as a result of the obligor being terminated from employment. These benefits include, but are *not limited to,* unemployment compensation, workers' compensation benefits, severance pay, sick leave, lump-sum payments of retirement benefits or contributions, and bonuses or profit sharing payments or distributions. Also, the employer should include in the notification the obligor's last known address and phone number, date of birth, social security number, and court case number and, if known, the name and business of any new employer of the obligor.

On January 23, 1986, the court ordered Timken to deduct $40 per week in child support, plus two percent poundage from plaintiff's paycheck. It also ordered Timken to notify the Bureau of Child Support if the plaintiff was laid off or terminated. On November 21 1986, Timken did notify the Bureau of Child Support that plaintiff was laid off and that plaintiff might be eligible to collect both supplemental unemployment benefits from Timken and unemployment benefits from the

state of Ohio. However, Timken was not certain whether plaintiff would receive these benefits or, if he did, the amount he would receive.

Defendant, Janet Robbins, argues that the supplemental unemployment benefits that plaintiff received from Timken are personal earnings according to R.C. 3113.21(D)(1).

Since "personal earnings" is a term which is not defined in R.C. 3113.21 or by case law interpreting that statute, defendant cites out-of-state case law in which "earnings" were defined to mean more than wages. In *Pope* v. *Pope* (Md. App. 1978), 390 A. 2d 1128, unemployment insurance benefits were considered earnings within the state statute. However, R.C. 3113.21 expressly provides that unemployment compensation is a benefit of employment other than personal earnings.

Defendant also cites *Ward* v. *Ward* (1978), 164 N.J. Super. 354, 396 A. 2d 365, and *Villano* v. *Villano* (1979), 98 Misc. 2d 774, 783, 414 N.Y. Supp. 2d 625, 632, in which the courts found that pension benefits were considered earnings within the meaning of the Consumer Credit Protection Act, Section 1601 *et seq.*, Title 15, U.S. Code. However, R.C. 3113.21 provides that lump-sum payments of retirement benefits are benefits instead of personal earnings. Thus, these cases which interpret earnings to include unemployment compensation and retirement benefits are directly contradicted by R.C. 3113.21's explicit list of what is a benefit and not a personal earning. Hence, the cases cited by defendant are not helpful in interpreting R.C. 3113.21.

Defendant also relies on dictionary definitions of the word "earning" and argues that it connotes a larger class of benefits than simply wages.

Nevertheless, R.C. 3113.21 reflects a statutory scheme concerning the withholding of child support which distinguishes between personal earnings and benefits. Examples of benefits designated as such in R.C. 3113.21(D)(1)(b) are unemployment compensation and workers' compensation benefits. The dictionary definition of "earnings" which would include payments such as unemployment compensation is too general to be relied upon in understanding the meaning of "personal earnings" in R.C. 3113.21.

The supplemental unemployment benefits received by plaintiff are a form of unemployment compensation. If regarded as such, according to R.C. 3113.21(D)(1)(b), they are not personal earnings from which Timken must withhold child support, but are benefits from which Timken was not required to withhold and to pay to the court absent the issuance of a modified order.

However, since SUB is created by a collective bargaining agreement, unlike unemployment compensation, which is paid by the government, it could be argued that it should be in a different category. Even if that argument is accepted, the issue remains whether SUB should be considered personal earnings or benefits. R.C. 3113.21 gives us an inclusive list of payments which are considered benefits. These include sick leave, severance pay, lump-sum payments of retirement benefits or contributions, bonuses, and profit sharing payments or distributions of benefits. All of these payments, some of which can be created by a collective bargaining agreement, are not direct payments of personal earnings. Instead, unemployment compensation, severance pay, and retirement benefits take the place of the wages or salary which the employee will not receive because of his absence from work. Thus, the common factor underlying the payments designated in R.C. 3113.21(D)(1)(b) as

benefits is that they replace wages or salary which the employee will not receive because of his absence from work.

Since supplemental unemployment benefits are payments which plaintiff received because of his absence from work, these payments fit within the open-ended category of "benefits" as defined in R.C. 3113.21(D)(1)(b).

The trial court, when it found that the supplemental unemployment benefits were personal earnings and not benefits, said that underlying its conclusion were policy considerations concerning child support payments. The court held that the legislature, in enacting R.C. 3113.21, intended to promote the payment of child support through withholding earnings paid to the obligors under child support orders.

However, if a form of income falls under the category of benefits as enumerated in R.C. 3113.21(D)(1)(b), the trial court may accomplish the statutory objective by issuing an order requiring that the employer withhold child support from the obligor's income, including those benefits, instead of restricting the order to personal earnings. R.C. 3113.21(D)(4). If the court follows the statutory scheme established in R.C. 3113.21, it will be able to ensure that there is a continuous flow of child support regardless of the form of income that the obligor is receiving from the employer.

For these reasons, Timken was not in contempt of court when it did not withhold plaintiff's supplemental unemployment benefits for child support.

Appellant's first assignment of error is sustained.

In its second assignment of error, appellant argues that the trial court erred, as a matter of law, in ordering Timken to pay the attorney fees of Janet Robbins.

Since Timken was not in contempt of court, it was not liable to defendant for her attorney fees. Even if there is otherwise an obligation for the employer to pay attorney fees in the type of action involved herein, which seems questionable in light of the fact that R.C. 3113.213 appears to state the exclusive remedies available against an employer who fails to make court ordered withholdings for support, those remedies do not include an award of attorney fees. Since the rights of recovery by the support beneficiary against the employer are solely statutory, a common-law obligation to pay attorney fees as part of the support similar to that imposed upon the noncustodial parent should not be applied.

Appellant's second assignment of error is sustained.

Appellant's assignments of error are sustained, and the judgment of the trial court is reversed.

*Judgment reversed and cause remanded.*

STRAUSBAUGH and BOWMAN, JJ., concur.