The AETNA CASUALTY & SURETY
COMPANY, Plaintiff,

v.

RODCO AUTOBODY, et al., Defendants.

Civil Action No. 89–2180–WGY.

United States District Court,
D. Massachusetts.

April 2, 1996.

John P. Graceffa, Gallagher & Gallagher, Richard A. McGovern, David O. Brink, Brynes Smith & Brink, Quincy, MA, for Plaintiff.

William Spallina, Newton, MA, for Zareh Tirinkian, Lena Tirinkian, Peter Markarian, Tarja Markarian, Jack Markarian, and Arsenal Auto Repairs, Inc.

Kenneth R. Berman, Sherin & Lodgen, Boston, MA, for Jack Markarian.

Robert Gilligan, Singer & Singer, Medford, MA, for Edward Ryan.

J. Sheffield, Dow, Boston, MA, for Mohammad El Ghazzaowi.

William D. Crowe, Crowe & Dunn, Boston, MA, for Steven Dexter.

## ORDER

### WILLIAM G. YOUNG, District Judge.

After considering the opposition, the report and recommendation is approved and

the recommendations become orders of the court.

## REPORT AND RECOMMENDATION RE: PLAINTIFF/JUDGMENT–CREDITOR THE AETNA CASUALTY AND SURETY COMPANY'S APPLICATION FOR SUPPLEMENTARY PROCESS UNDER MASS. GEN. LAW CH. 224, § 14 (*DOCKET ENTRY # 1324*)

BOWLER, United States Magistrate Judge.

In March 1995 this court conducted hearings in accordance with section 14 of Massachusetts General Laws chapter 224 ("chapter 224") with respect to the above styled motion (Docket Entry # 1324).[1] At the outset of the hearings, this court advised counsel that the scope of the hearing concerned only the matter of supplementary process. (Tr. I, pp. 19–23).[2] Moreover, issues of fraudulent conveyance are duplicative of issues raised in Aetna's action to collect on the judgment, The *Aetna Casualty & Surety Company v. Zareh Tirinkian et al.*, Civil Action No. 94–12063–PBS. This court therefore confines its review to an examination of the judgment debtors as to their nonexempt property and ability to pay the judgment. Mass. Gen. L. ch. 224, §§ 14 & 15.[3]

This court further confines its review to the ability of defendants Haroutioun Markarian, a/k/a Peter Markarian ("HM") and Taria Markarian ("TM") to pay the judgment[4]

---

1. The district judge referred the motion to the undersigned. Subsection 636(b)(3) of Title 28 of the United States Code provides for such a referral. *See Rubin v. Smith*, 882 F.Supp. 212, 215 n. 6 (D.N.H.1995).

2. "Tri I" refers to the transcript of the March 7, 1995 hearing.

3. Section 14 provides, in pertinent part, that:

   § 14. Supplementary process; application; corporations and certain trusts; proceedings
   A judgment creditor or a person in his behalf may file in court an application for supplementary process under this chapter. Upon the filing of such an application, a summons may issue, requiring the judgment debtor to appear at a time and place named therein and submit

   to an examination relative to his or its property and ability to pay ...
   Mass. Gen. L. ch. 224, § 14.
   Section 15 states, in part, that, "The judgment debtor, if appearing, shall be examined on oath as to his or its property and ability to pay...."
   Mass. Gen. L. ch. 224, § 15.

4. The Second Amended Judgment (Docket Entry # 1286) issued on November 2, 1993, adjudges HM, TM and other defendants jointly and severally liable to Aetna for $2,369,901.72, together with interest at a rate of 12% per annum from October 2, 1989, on the sum of $2,369,901.72, together with costs, expenses, disbursements and attorneys' fees in the aggregate amount of $1,500,000. The judgment additionally levies a penalty against HM under Massachusetts Gener-

due to the suggestions of bankruptcies filed by Jack Markarian (Docket Entry # 1362), Lena Tirinkian (Docket Entry # # 1389 & 1395) and Zareh K. Tirinkian (Docket Entry # # 1390 & 1396). In addition, Aetna did not present sufficient evidence of the assets and the ability to pay the judgment with respect to other defendants identified in the original application for supplementary process (Docket Entry # 1324) thereby failing to meet its burden of proof.[5]

On March 7 and 9, 1995, this court heard the testimony of HM. Aetna served a subpoena on HM on Tuesday February 28, 1995. (Docket Entry # 1385, Ex. A). Section 14 of chapter 224 requires service of the summons "at least seven days before the return date thereof." Mass. Gen. L. ch. 224, § 14. Discounting the intervening Saturday and Sunday and not counting the day of February 28, 1995, see Rule 6(a), Fed.R.Civ.P., the service was untimely as to the March 7, 1995 testimony and timely as to the March 9, 1995 testimony. On March 9, 1995, HM's attorney represented that HM wished to incorporate the testimony taken to date at the time testimony resumes in order to avoid taking repetitive and further testimony. This court accepted the representation. HM's testimony resumed on March 22, 1995. Accordingly, the supplementary process record properly includes the March 7, 1995 testimony of HM.

Aetna also timely served defendants Zareh Tirinkian ("ZT") and TM on March 13, 1995, seven days prior to their March 22, 1995 testimony excluding the intervening Saturday and Sunday and the day of March 13, 1995. The supplementary process record therefore includes the March 22, 1995 testimony of ZT and TM. The record also includes the testimony of the remaining witnesses who are not "judgment debtors" within the meaning of section 14 of chapter 224.

Rule 69, Fed.R.Civ.P., provides that "[p]rocess to enforce judgment ... shall be in accordance with the practice and procedure of the state in which the district court is held ... except that any statute of the United States governs to the extent that it is applicable." Rule 69, Mass. R. Civ. P., states, in part, that, "The procedure on execution, in proceedings on and in aid of execution shall be in accordance with applicable statutes." *See Geehan v. Trawler Arlington, Inc.,* 371 Mass. 815, 359 N.E.2d 1276 (1977) (discussing proper procedure).

Sections 14, 15 and 16 of chapter 224 and the applicable statutory exemptions therefore apply to the supplementary process matter before this court.[6] Supplementary process generally enables a judgment creditor, such as Aetna, "to apply for supplementary process and for examination" of the judgment debtor with respect to his property and "his ability to pay." *Giarruso v. Payson,* 272 Mass. 417, 172 N.E. 610, 611 (1930). "The design of the statute ... is 'to provide a searching inquiry into the ability of the judgment debtor to pay his legal obligation.'" *Goldman v. Adlman,* 291 Mass. 492, 197 N.E. 632, 634–635 (1935) (quoting *Giarruso v. Payson,* 172 N.E. at 611). Section 15 of chapter 224 mandates that the judgment debtor "shall be examined on oath as to his or its property and ability to pay." Mass. Gen. L. ch. 224, § 15. The parties "may introduce additional evidence," Mass. Gen. L. ch. 224, § 15, and the court need not issue extensive written findings as to the reasons for the order. *Cf. Bornstein v. Justices of Municipal Court of the City of Boston,* 269 Mass. 515, 169 N.E. 410, 411 (1930) ("judge not obliged to file a statement of his reasons" under Massachusetts law).

As stated in section 16 of chapter 224, the judgment creditor, in this instance Aetna, has the burden of proof. In the event the

---

al Laws chapter 93A in the amount of $1,579,-934.48.

**5.** Aetna named several other defendants in its application (Docket Entry # 1324), including Steven R. Dexter, Petros Arhaggelidis, Betty Arhaggelidis and Mohamad El Ghazzaowi.

**6.** This court lacks the authority to issue an order for criminal contempt. *See F.D.I.C. v. LeGrand,* 43 F.3d 163, 167 (5th Cir.1995). Subsection 636(e) of the United States Code expressly and explicitly delineates the manner of handling contempt proceedings before a magistrate judge. *See also* Rule 21. Rules for United States Magistrates in the United States District Court for the District of Massachusetts.

court finds that the judgment debtor has property which is not exempt under section 34 of Massachusetts General Laws chapter 235 ("chapter 235"), the court may order the judgment debtor to produce the nonexempt property with interest and costs of execution. Mass. Gen. L. ch. 224, § 16. The court may also order the judgment debtor to pay the judgment in full or in partial payments and/or may order the judgment debtor to execute and to deliver to the judgment creditor "a transfer, assignment or conveyance thereof" with respect to the nonexempt property. Mass. Gen. L. ch. 224, § 16. If the judgment debtor refuses to redeem the property within the time stated, "it shall be sold forthwith at public auction." Mass. Gen. L. ch. 224, § 17; see *Mayone v. Municipal Court of the City of Boston*, 335 Mass. 717, 142 N.E.2d 383, 384 (1957) (discussing sections 16 and 17 and the court's authority thereunder). Finally, the court may review, modify or revoke any order made under chapter 224. Mass. Gen. L. ch. 224, § 16.

Exemptions applicable to the present dispute include the following: (1) a homestead estate up to the amount of $100,000, Mass. Gen. L. ch. 235, § 34; Mass. Gen. L. ch. 188, § 1; (2) wage garnishments not in excess of 25% of the employee's weekly "disposable earnings," 15 U.S.C. § 1673(a)(1); [7] (3) wages or salary of the debtor except on claims, such as the one at bar, which have been reduced to a judgment, and then only in an amount in excess of $125 per week, Mass. Gen. L. ch. 246, § 28; Mass. Gen. L. ch. 246, § 32, ¶ 8; Mass. Gen. L. ch. 235, § 34, ¶ 15; Mass. R. Civ. P. 4.2(a); [8] (4) an amount up to $500 of monies held in a banking institution doing business in Massachusetts, Mass. Gen. L. ch. 246, § 28A; (5) an automobile required for personal transportation not exceeding $700 in value, Mass. Gen. L. ch. 235, § 34, ¶ 16; (6) an amount up to $75 per month for fuel, heat, water and light, Mass. Gen. L. ch. 235, § 34, ¶ 1; and (7) an amount for necessary provisions to support the family not exceeding $300, Mass. Gen. L. ch. 235, § 34, ¶ 7.

**7.** The above cited federal garnishment statute, 15 U.S.C. § 1673, preempts the Massachusetts garnishment procedure to the extent that the state statutes permit recovery in excess of 25% of the judgment debtor's disposable weekly earnings. *See Donovan v. Hamilton County Municipal Court*, 580 F.Supp. 554, 557 (S.D.Ohio 1984); *Crane v. United States*, 417 F.Supp. 38, 39 (E.D.Okla.1976) (federal law "only preempts state garnishment laws which permit a larger amount to be garnished than set out in the federal law"); Fed.R.Civ.P. 69; 15 U.S.C. § 1677.

The statute defines the term earnings as "compensation paid or payable for personal services, whether denominated as wages, salary, commission, *bonus* [emphasis added] or otherwise." 15 U.S.C. § 1672(a). The term disposable earnings consists of the earnings of an individual which remain "after the deduction from those earnings of any amounts required by law to be withheld," 15 U.S.C. § 1672(b), and therefore excludes deductions for social security and withholding taxes. *See Marshall v. District Court for Forty–First-b Judicial District of Michigan*, 444 F.Supp. 1110, 1115 (D.C.Mich.1978) ("amounts required by law to be withheld' includes the amount of deductions for federal Social Security taxes (employee portion only) and withholding taxes"). The terms earnings and disposable earnings customarily involve "periodic payments of compensation and do not pertain to every asset that is traceable in some way to such compensation." *Kokoszka v. Belford*, 417 U.S. 642, 651, 94 S.Ct. 2431, 2436, 41 L.Ed.2d 374 (1974) (quoting, with approval, language from lower court's decision).

The term garnishment "means any legal or equitable procedure through which the earnings of any individual are required to be withheld for payment of any debt." 15 U.S.C. § 1672.

A trustee summons issued in this action on January 3, 1995, to HM's employer, Hi–Tech Auto Body, Inc. ("Hi–Tech"). The summons directed the attachment of credits and amounts in the hands of Hi–Tech in the amount of the lessor of 25% of HM's disposable earnings or the amount designated in 15 U.S.C. § 1673(2) which, in light of HM's salary, appears inapplicable. The trustee summons additionally advised Hi–Tech that an amount not exceeding $125 of HM's wages for personal labor or personal services was exempt from the attachment. *See* Mass. Gen. L. ch. 235, § 34, ¶ 15.

Accordingly, the record already contains an existing garnishment order in the appropriate, nonexempt amount in accordance with 15 U.S.C. § 1673 and paragraph 15 of section 34 of chapter 235 lodged against the wages of HM. Hi–Tech's compliance or noncompliance with the trustee summons is not the subject of the present supplementary process matter. Rather, this court uses the summons and the answer of Hi–Tech to the summons as a means of gageing the present ability of HM and TM to make partial payments on the judgment.

**8.** See the last two paragraphs in the previous footnote.

Without elucidation, HM and TM cite to 15 U.S.C. §§ 1673(a)(1) and 1671 as mandating the protection of monies held in an individual retirement account or IRA. (Docket Entry #1403, p. 8). This court disagrees. HM and TM are not insolvent debtors and therefore not subject to state insolvency statutes. The federal statute, commonly known as the Consumer Credit Protection Limit Act, sets a ceiling for the maximum amount of allowable garnishment of 25% of the debtor's "disposable earnings of that week." 15 U.S.C. § 1673; *Long Island Trust Company v. United States Postal Service,* 647 F.2d 336, 339 (2d Cir.1981) (section 1673 places "a ceiling of 25 percent on the amount of an employee's disposable earnings that is subject to garnishment"). The act defines earnings as including *"periodic* [emphasis added] payments pursuant *to* [emphasis added] a pension or retirement program." 15 U.S.C. § 1672(a). While periodic payments by the employer of retirement pay or pension benefits therefore constitute earnings and are subject to the 25% maximum, *see, e.g., Evans v. Evans,* 429 F.Supp. 580, 582 (W.D.Okla.1976); *Villano v. Villano,* 98 Misc.2d 774, 414 N.Y.S.2d 625, 632 (Sup. Ct.1979), lump sum severance payments by the employer do not fall within the protective umbrella of 15 U.S.C. § 1673. *See Blackstock v. Blackstock,* 1995 WL 782993 at * 5 (Del.Fam.Ct. May 11, 1995) (citing *Pallante v. International Venture Investments,* 622 F.Supp. 667, 669 (D.C.Ohio 1985)). Moreover, as noted by the court in *Blackstock,* the payment should "emanate from an employee/obligor-employer relationship" and, consequently, excludes payments by a third party/insurer carrier to the employee for personal injury protection benefits. *Blackstock v. Blackstock,* 1995 WL 782993 at * 6 (Del.Fam.Ct. May 11, 1995). Accordingly, voluntary contributions of monies by the employee/debtor to an individual retirement account do not fall within the definition of "earnings" and, hence, do not have the protection afforded by the 25% maximum in 15 U.S.C. § 1673.

HM and TM also argue that 15 U.S.C. §§ 1671 and 1673 limit Aetna's ability to attach bank funds generated by HM's paycheck. (Docket Entry #1403, pp. 1–2).

Once disposable earnings are commingled with other funds such as in a bank account, however, they lose their exempt status. *See Citronelle–Mobile Gathering, Inc. v. Watkins,* 934 F.2d 1180, 1191 (11th Cir.1991); *Usery v. First National Bank of Arizona,* 586 F.2d 107, 108–110 (9th Cir.1978) (rejecting argument that compensation paid to employee retains its character as "earnings" after being deposited into employee's bank account).

HM testified that he does not have a present checking account in his name. When he receives his paycheck, HM deposits the amount in a checking account at a Massachusetts banking institution, BayBank, held in the name of his son, Eric A. Markarian. After depositing the monies in the BayBank account, HM and TM use the account to pay their household bills, food costs, outstanding mortgages, electricity, cellular telephone bills, cable television, swimming pool maintenance costs and other expenses.

Eric A. Markarian maintained two bank accounts at BayBank at the time of the March 1995 hearings. He described one account as his personal checking account. His mother, TM, had check writing authority on the other bank account.

HM and TM submitted a list of their monthly expenses totaling approximately $7,900 and monthly net income of approximately $7,750. Their monthly expense items far exceed the list of exempt property set forth in section 34 of chapter 235. For example, HM and TM claim monthly expenses in various amounts for charity donations, birthday and Christmas gifts, lawn care and restaurants. They also had sufficient funds to travel out of the country in 1994. As recently as February 1995, HM had saved $2,000 in anticipation of taking a seven day cruise with his wife and daughter.

In light of the foregoing and having considered the testimony and exhibits admitted into the record at the supplementary process hearings in March 1995, this court finds that HM and TM have the ability to make partial payments on the judgment debt in a monthly amount of $1,500. In accordance with section 16 of chapter 224, HM and/or TM are

ordered to make a partial payment of $1,500 to Aetna on the first day of each month.[9] The $1,500 monthly payment shall reduce the amount of the outstanding judgment which is presently accruing post judgment interest.

■ Further, HM and TM possess or have an interest in the following property: (1) a single family home located at 14 Brookdale Circle, Billerica, Massachusetts ("the Billerica home"); (2) a townhouse west of Boca Raton, Florida; (3) a condominium in Watertown, Massachusetts ("the Watertown condominium");[10] (4) an undeveloped parcel of land in Citrus Hill, Florida; (5) an IRA with a company known as American Funds; and (6) a 1986 Mercedes 560 SEL.

The Billerica home, which HM and TM hold title to as tenants in the entirety and maintain as their principal residence, is subject to a mortgage. HM estimated the present value of the property as ranging from $185,000 to $200,000. They have owned the home for the past 13 to 14 years and have accumulated equity in the property slightly below $100,000.

■ HM has a homestead interest in the property created in March 1993 and therefore existing prior to the judgment debt. See Mass. Gen. L. ch. 188, § 1(2). The homestead interest is subordinate to the mortgagee's interest and those claiming under him. Mass. Gen. L. ch. 188, §§ 5 & 6; see Atlantic Savings Bank v. Metropolitan Bank & Trust Company, 9 Mass.App.Ct. 286, 400 N.E.2d 1290, 1291–1292 (1980); In re Medeiros, 144 B.R. 624, 625 (Bkrtcy.D.R.I. 1992) (applying Massachusetts law).[11] Inasmuch as the homestead confers protection to the extent of $100,000, the Billerica home is exempt property up to the $100,0000 homestead interest. In the event HM and TM's interest in the property exceeds $100,000 in the future, Aetna may seek further relief from this court as provided for under section 16 of chapter 224.

The Boca Raton townhouse constitutes nonexempt property which is subject to a mortgage in an estimated amount of $65,000. HM purchased the property for $82,000 but does not remember the year of purchase. Title to and the form of ownership of the property are unclear. In accordance with section 16 of chapter 224, HM and/or TM are ordered to execute, acknowledge and/or deliver to Aetna a transfer, assignment and/or conveyance of their entire interest in the Boca Raton townhouse to Aetna. Aetna shall have an independent appraisal of the value of the property at the time of transfer performed with the cost born by HM and TM.[12] HM and TM shall execute any necessary documentation in order to perform the appraisal. Thereafter, Aetna shall file a copy of the appraisal with the court.

The Watertown condominium is also nonexempt property. It is subject to a mortgage in an estimated amount of $50,000. The present value of the property is unclear. HM purchased the Watertown condominium for $42,700 in or around 1976. In accordance with section 16 of chapter 224, HM and/or TM are ordered to execute, acknowledge and/or deliver to Aetna a transfer, assignment and/or conveyance of their entire interest in the Watertown condominium to Aetna. Aetna shall have an independent appraisal of the value of the property at the time of transfer performed with the cost born by HM and TM. HM and TM shall execute any

---

9. Aetna maintains that HM and TM should make the payment in the form of a certified check. Such a requirement is not necessary at the present time.

10. HM and TM did not dispute Aetna's statement that they owned the condominium. Rather, they disputed the value of the condominium and the value of their interest in the property. (Docket Entry # # 1398 & 1403, ¶¶ 13).

11. To the extent there is any doubt about the priority of the mortgagee's interest, the answers to the presently certified questions to the Massachusetts Supreme Judicial Court ("SJC") in

Dwyer v. Cempellin, 189 B.R. 230 (D.Mass.1995), may resolve the issue. The parties should advise this court in the event the SJC renders an opinion which becomes relevant to the present dispute.

12. Section 16 of chapter 224 states, in pertinent part, that the court may order the judgment/debtor "to pay the judgment, with interest, as provided for by said section eight, and with costs of execution and costs of the proceedings or in aid of judgment or execution in full or by partial payments." Mass. Gen. L. ch. 224, § 16.

necessary documentation in order to perform the appraisal. Thereafter, Aetna shall file a copy of the appraisal with the court.

Similarly, the undeveloped parcel of land in Citrus Hill, Florida constitutes nonexempt property. HM purchased the land for $17,-500. The balance on the existing mortgage of the property is approximately $2,500 to $3,000. The present value of the property is unclear. In accordance with section 16 of chapter 224, HM and/or TM are ordered to execute, acknowledge and/or deliver to Aetna a transfer, assignment and/or conveyance of their entire interest in the undeveloped parcel of land in Citrus Hill, Florida to Aetna. Aetna shall have an independent appraisal of the value of the property at the time of transfer performed with the cost born by HM and TM. HM and TM shall execute any necessary documentation in order to perform the appraisal. Thereafter, Aetna shall file a copy of the appraisal with the court.

The IRA account held in HM's name, according to HM's testimony, contains an estimated $6,000. HM testified that he and/or TM, rather than HM's employer, contribute to the IRA on an annual basis. As previously explained, the IRA therefore constitutes nonexempt property. In accordance with section 16 of chapter 224, HM and/or TM are ordered to execute, acknowledge and/or deliver to Aetna a transfer, assignment and/or conveyance of their entire interest in the IRA account. Aetna shall file a statement denominating the value of the IRA at the time of the transfer with the court.

HM and TM also own one automobile, the 1986 Mercedes 560 SEL, which they use for transportation. HM purchased the automobile for $17,000 but does not remember the year of purchase. He also does not recall whether title to the vehicle is in his name and/or TM's name. The automobile is not subject to a car loan. As previously noted, the automobile constitutes exempt property

to the extent that the value of the automobile does not exceed $700. Mass. Gen. L. ch. 235, § 34. In accordance with section 16 of chapter 224, HM and/or TM are ordered to obtain and pay for an appraisal of the vehicle by an independent appraiser designated by Aetna. In the event the value of the automobile exceeds $700, the vehicle constitutes nonexempt property and Aetna should apply to this court for an appropriate order as provided for under section 16 of chapter 224.

At the time HM and TM incurred the judgment debt, they no longer had title to a classic 1970 Mercedes coupe. The automobile is presently owned by Eric A. Markarian who acquired title to the vehicle on July 4, 1993. (Ex. 3).

## CONCLUSION

In accordance with the foregoing discussion, this court **RECOMMENDS**[13] that HM and TM be ordered to make a monthly payment of $1,500 to Aetna as partial payment on the amount of the outstanding judgment. This court further **RECOMMENDS**[14] that HM and TM be ordered to execute, acknowledge and/or deliver to Aetna a transfer, assignment and/or conveyance of their entire interest in the Boca Raton townhouse, the Watertown condominium, the undeveloped parcel of land in Citrus Hill, Florida and the IRA account to Aetna on or before March 15, 1996. Thereafter, Aetna should file an affidavit with the court listing the independently appraised value of the aforementioned property at the time of transfer as explained in the body of this opinion. This court also **RECOMMENDS**[15] that HM and TM be ordered to obtain and to pay for an appraisal of the 1986 Mercedes 560 SEL by an independent appraiser designated by Aetna on or before March 15, 1996. Finally, this court

---

**13.** Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. Any party may respond to another party's objections within ten days after service of the objections. Failure to file objections within the specified time waives the right to appeal the district court's order.

*United States v. Escoboza Vega,* 678 F.2d 376, 378–379 (1st Cir.1982); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986).

**14.** See the preceding footnote.

**15.** See footnote number 13.

**RECOMMENDS**[16] that Aetna's application for supplementary process (Docket Entry # 1324) be **ALLOWED** to the extent set forth in this opinion.

DATED: March 7, 1996.

---

**16.** See footnote number 13.